UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AGS HOLDINGS, INC.,

      Plaintiff,

v.

CUSTOM PERSONALIZED LAWN
CARE CORPORATION,

      Defendant.

_____/

Case No. 20-10873

Stephanie Dawkins Davis
United States District Judge

## OPINION AND ORDER
## GRANTING IN PART AND DENYING IN PART
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 19)

### I. INTRODUCTION

Before the court is Defendant Custom Personalized Lawn Care
Corporation's Motion for Summary Judgment. (ECF No.19). Plaintiff, AGS
Holdings, Inc., filed a complaint against Customer Personalized Lawn Care
Corporation (also known as Custom Lawn Care, or "CLC"), accusing CLC of
trademark infringement and violating the Michigan Consumer Protection Act.
(ECF No. 1, PageID.6–10). CLC moves for summary judgment, arguing that it did
not infringe AGS's trademark and that it did not engage in unfair competition
under Michigan law. For the reasons discussed below, the court will **GRANT IN
PART AND DENY IN PART** Defendant's Motion. More specifically, the court

**GRANTS** summary judgment as to the claims related to AGS's registered stylized Defender mark, but **DENIES** summary judgment as to the claims related to AGS's unregistered "Defender" mark.

## II. FACTUAL BACKGROUND

This action involves the alleged infringement of two trademarks—a registered trademark and an alleged common law mark. Plaintiff AGS is a Michigan company that provides lawn and tree care services. (ECF No. 1, PageID.2). AGS has two divisions—a Lush Lawn division and a Safari Tree division. (*Id.* at PageID.3). In January of 2018, AGS began to offer what it named the "Defender" program under its Safari Tree division. *Id.* Under the Defender program AGS provides periodic pest control treatments that extend throughout Michigan's bug season. *Id.* On January 9, 2018, AGS filed an application to trademark the word "Defender" with the "D" appearing in the shape of a shield (hereinafter "stylized Defender mark"). (ECF No. 1-4, PageID.23). The United States Patent and Trademark Office ("USPTO") registered the trademark on April 16, 2019. *Id.* AGS uses the stylized Defender mark to brand its Defender Program as follows:



Defendant CLC is a company that provides fertilization, weed control, and outdoor pest control services primarily to residential customers.  (ECF No. 19, PageID.253).  In approximately October or November of 2018, CLC upgraded its website and used the word "Defender" to name one of its mosquito and pest control treatment plans:

**Defender Plan**

Our Defender Plan includes 5 treatments for complete protection against mosquitoes and crawling insects surrounding your home

(ECF No. 19, PageID.253).  CLC decided to name its treatment plan the "Defender Plan" to play off of a Dow Chemical product that was previously named "Defendor."  (ECF No. 19-2, PageID.283).  CLC used the term "Defender Plan" only on its website, and not in written advertising.  (*Id.* at PageID.146–47).  CLC stopped using the term "Defender Plan" in approximately November of 2020. (ECF No. 19, PageID.254).  CLC asserts that it was not aware of AGS's stylized Defender trademark until AGS filed this lawsuit.  *Id.*

AGS's complaint asserts (1) infringement of its stylized Defender mark in violation of 15 U.S.C. §1114[1]; (2) federal trademark infringement and unfair competition in violation of 15 U.S.C. §1125(a); (3) Michigan common law

---

[1] Also known as the Lanham Act.  The Lanham Act is codified at 15 U.S.C. §1051 *et seq*.

trademark infringement and unfair competition; and (4) a violation of the Michigan Consumer Protection Act.  (ECF No. 1, PageID.6–10).  CLC answered the complaint on June 3, 2020, denying liability and asserting the fair use doctrine as an affirmative defense.  (ECF No. 6, PageID.46).  CLC filed the present motion for summary judgment asserting, among other things, that it has not used AGS's trademarks. The motion is fully briefed, the court conducted a hearing at which it heard arguments from both sides, and the motion is now ready for determination. (ECF Nos. 19, 20, 23).

## III. LEGAL STANDARD

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d

433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).  Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  That means the party opposing a motion for summary judgment must make an affirmative showing with proper evidence, and to do so the non-movant must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004).  In order to fulfill this burden, the non-moving party only needs to demonstrate the minimal standard that a jury could ostensibly find in his favor.  *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 251.

The court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252–53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case for which it carries the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

## IV. DISCUSSION

### A. Stylized Defender Mark

In Count I of its complaint AGS asserts that CLC infringed on its registered trademark, in violation of 15 U.S.C. §1114, by having a program called the

"Defender Plan".  (ECF No. 1, PageID.6).  AGS owns Trademark Registration No. 5,729,067—the stylized Defender mark.  (ECF No. 1-4).  CLC counters that it never used AGS's trademark; therefore it cannot be liable under the Lanham Act.  (ECF No. 19, PageID.256, 264).  AGS responds that its stylized Defender mark is entitled to trademark protection because it has been registered by the USPTO.  (ECF No. 20, PageID.404).  Further, AGS argues that CLC's use of the word Defender is likely to be confused with its stylized Defender trademark.  (ECF No. 1, PageID.6; ECF No. 20, PageID.411).  CLC replies that there is no evidence that it ever used AGS's stylized Defender mark, hence the court should dismiss all of Plaintiff's claims regarding the stylized Defender mark.  (ECF No. 25, PageID.481).

Under the Lanham Act,

(1) Any person who shall, without the consent of the registrant--
(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant[.]

15 U.S.C. § 1114.  The "use of a protected mark or [the] use of a misleading

representation is a prerequisite to the finding of a Lanham Act violation." *Holiday*

*Inns, Inc. v. 800 Rsrv., Inc.*, 86 F.3d 619, 626 (6th Cir. 1996).  In *Holiday Inns*, the

plaintiff brought suit against the defendant, alleging that the defendant had

infringed its trademark of its telephone number, 1-800-HOLIDAY (1-800-465-

4329). *Id.* at 620.  The defendant's phone number was 1-800-405-4329, a number

that potential Holiday Inns customers frequently dialed by mistake when they

unintentionally dialed the number zero for the letter "O." *Id.*  The plaintiff

acknowledged that the defendants never used its trademarked phone number or a

deceptively similar mark. *Id.* at 625.  However, the plaintiff argued that there was

still a Lanham Act violation because of the likelihood of confusion for consumers

between the two numbers. *Id.*  The court reasoned that there was no case in which

a defendant neither used the offending mark nor created the confusion and was

deemed to have committed trademark infringement. *Id.* at 626.  The court

correspondingly concluded that without a finding that the defendant used

plaintiff's trademarked phone number or a misleading representation of the

number, there could not be a violation under the Lanham Act. *Id.*

AGS has a trademark for the stylized word "Defender," where the letter "D"

appears in the shape of a shield.  (ECF No. 1-4, PageID.23).  AGS does not allege

and offers no evidence that CLC actually copied and used its stylized Defender

-8-

mark, or that CLC used any type of variation on its stylized mark in attempts to imitate the mark.  (*See* ECF No. 20).  Rather, AGS argues that CLC infringed its mark by using the term "Defender" because there is a likelihood of confusion between CLC's use of the Defender term and AGS's stylized Defender mark. (ECF No. 20, PageID.411).  Plaintiff's argument thus mimics the plaintiff's argument in *Holiday Inns* that the defendant is liable for trademark infringement because there is a likelihood of confusion between the parties' marks even though the defendant did not actually copy the plaintiff's mark.  In order to prove the existence of a Lanham Act violation for a registered mark, a plaintiff must show that the alleged violator used the mark or a misleading representation of the mark. Here, AGS neither asserts that CLC used its stylized Defender mark nor that CLC used some version of the stylized defender mark that was a misleading representation of the mark.  Therefore, similar to the *Holiday Inns* court, Defendant cannot be liable for violation of 15 U.S.C. § 1114 of the Lanham Act.  For this reason, the court will grant summary judgment in favor of CLC as to Count I of AGS's complaint that alleges CLC infringed on it stylized Defender mark in violation of 15 U.S.C. § 1114.

## B. Common Law "Defender" Mark

AGS asserts that it also has common law trademark rights in the Defender name that were established when it started providing pest control services under

the name "Defender."  (ECF No. 1, PageID.5).  CLC argues, however, that the word Defender is generic, and therefore cannot be subject to trademark protection.  (ECF No. 19, PageID.259).  Even if the court finds that AGS has common law trademark rights in the Defender name, CLC also contends that the affirmative defense of fair use precludes liability.   (*Id.* at PageID.262).  Further, CLC argues that it cannot be held liable for trademark infringement because it used the term "Defender Plan" before Plaintiff registered its Defender trademark pursuant to 15 USC §115(b)(5).  (*Id.* at PageID.263–64).  Lastly, CLC contends that even if the court finds that it did use AGS's mark, there is no likelihood of confusion pursuant to the eight-factor *Frisch* test, and as a result it is not liable for trademark infringement.  (*Id.* at PageID.264).

AGS argues that the Defender name is not generic.  Rather, it is suggestive, and therefore it is entitled to common law trademark protection.  (ECF No. 20, PageID.413–14).  AGS also argues that the fair use doctrine is not applicable to this case.  (*Id.* at PageID.407).  Next, AGS contends that CLC misapplied the rule stating that there is no trademark infringement if another party uses a mark before it is registered by the USPTO.  (*Id.* at PageID.409).  Lastly, AGS states that the eight-factor *Frisch* test weighs in its favor and that there is a likelihood of confusion between CLC's use of the word Defender and its trademarks.  (*Id.* at PageID.411).

-10-

CLC replies that the word "Defender" is at best descriptive, and not suggestive, and therefore can only have trademark protection if it has acquired a secondary meaning, which it argues "Defender" has not and AGS makes no effort to establish otherwise.  (ECF No. 25, PageID.482–84).

## 1.  Classification of the Defender Term

A trademark does not have to be registered in order to use it in commerce and enforce it against infringers under the Lanham Act.  *Iancu v. Brunetti*, 139 S. Ct. 2294, 2297 (2019); *Fuji Kogyo Co. v. Pac. Bay Int'l, Inc.*, 461 F.3d 675, 682 (6th Cir. 2006).  According to the Lanham Act,

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).  AGS asserts that CLC's use of the name "Defender" for its pest-control plan is likely to cause confusion among consumers with AGS's

Defender program.  (ECF No. 1, PageID.8).[2]  CLC contends that AGS's use of the

generic word "Defender" is not protectable, and also  asserts that "Defender" is

descriptive and not subject to trademark protection.  (ECF No. 19, PageID.259;

ECF No. 25, PageID.483–84).  On the other hand, AGS insists that its use of the

word "Defender" is suggestive, and therefore protectable.  (ECF No. 20,

PageID.403–07).

"The protectability of [a] mark depends on the level of the mark's

distinctiveness."  *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 761 (6th Cir. 2005).

There are five classes of marks, ranging from least to most protected/distinctive: 1)

generic, 2) descriptive, 3) suggestive, 4) arbitrary, and 5) fanciful.  *T. Marzetti Co.

v. Roskam Baking Co.*, 680 F.3d 629, 633 (6th Cir. 2012).  Generic marks are not

afforded trademark protection under any circumstance, while suggestive, arbitrary,

and fanciful marks "are inherently distinctive and are protectable so long as the

putative owner has actually used the mark."  *Tumblebus*, 399 F.3d at 761; *see also*

---

[2] AGS's complaint and its response to this motion also allege that CLC violated 15 U.S.C. §
1125(a) by causing confusion with its registered stylized Defender mark.  (ECF No. 1,
PageID.6–8; ECF No. 20, PageID.411).  However, 15 U.S.C. § 1125(a), also known as Section
43(a) of the Lanham Act, only concerns the infringement of unregistered marks.  *See Fuji Kogyo
Co. v. Pac. Bay Int'l, Inc.*, 461 F.3d 675, 682 (6th Cir. 2006) (citing to 15 U.S.C. §1125(a) when
stating that "[t]he owner of an unregistered mark may also sue for infringement"); *ETW Corp. v.
Jireh Pub., Inc.*, 332 F.3d 915, 921 (6th Cir. 2003) ("Section 43(a) of the Lanham Act provides a
federal cause of action for infringement of an unregistered trademark"); *Abercrombie & Fitch
Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002) ("Section 43(a) of the
Lanham Act, 15 U.S.C. §1125(a), protects from infringement the unregistered [mark].").
Therefore, Plaintiff cannot allege that Defendant violated 15 U.S.C. §1125(a) in relation to its
registered stylized Defender mark.

*T. Marzetti*, 680 F.3d at 633.  "[D]escriptive marks are not inherently distinctive, but can become protectable by developing a secondary meaning." *Tumblebus*, 399 F.3d at 761 (internal quotations omitted).

### a. Generic

CLC argues that Plaintiff's use of the word Defender is generic and therefore not subject to trademark protection.  (ECF No. 19, PageID.259).  However, CLC does not provide much in the way of argument in its Motion explaining why AGS's use of the Defender term is generic.  (*See id.* at PageID.259–62).  CLC merely cites some cases for the general proposition that generic terms are not protectable. *See id.*  CLC also asserts in its reply that the use of the word Defender is generic, but provides no argument about why it is generic.  Instead, in its reply CLC reply argues that the use of word Defender is descriptive.  (ECF No. 25, PageID.482–86).  AGS responds that its use of the Defender term is not generic because of the required close connection between the word "Defender" and the pest control services offered by the parties.  (ECF No. 20, PageID.405).

Whether a mark is generic is a question of fact.  *T. Marzetti Co. v. Roskam Baking Co.*, 680 F.3d 629, 633 (6th Cir. 2012).  A generic term is a term that "the public perceives . . . primarily as the designation of the article."  *T. Marzetti*, 680 F.3d at 633–34 (quoting *Gen. Conference Corp. of Seventh–Day Adventists v.*

*McGill*, 617 F.3d 402, 413 (6th Cir.2010)) (internal quotations omitted).  "If a mark is primarily associated with a type of product rather than with the producer, it is generic."  *T. Marzetti*, 680 F.3d 629, 633–34 (6th Cir. 2012).  For example, the Sixth Circuit concluded that Texas Toast is a generic term because witness testimony established that Texas toast is commonly understood to describe a large bread product and not a producer of bread products.  *T. Marzetti*, 680 F.3d at 634.  Other examples of generic terms are Kleenex which has come to generally refer to tissues and Ziploc which generally identify plastic zip slide storage bags used primarily for food storage.  (ECF No. 20, PageID.405).

Here, it seems quite clear that the word Defender is not primarily associated with pest-control service programs.  CLC's own submissions of products with the word "Defender" on them show that Defender is used to describe *products* that eliminate mold, weeds, and insects, and not just *programs* that provide insect-control services.  (ECF No. 19-6).  As AGS points out, the word "Defender," without additional information, does not alert a consumer that it refers to pest control services.  (ECF No. 20, PageID.405).  Defender could easily refer to self-defense products, home alarm systems, or other products.  (*Id.* at PageID.406).  CLC has not submitted contrary evidence showing that the public primarily associates the word "Defender" with pest control services plans.  For this reason

and the reasons discussed, the court concludes that CLC has not established that "Defender" is a generic term.

## b. Classification as a Descriptive versus a Suggestive Mark

AGS argues that its use of the term "Defender" is suggestive.  (ECF No. 20, PageID.413).  In its reply, CLC counters that, at best, the term is a descriptive mark that is not protectable absent a secondary meaning.  (ECF No. 25, PageID.482).

Descriptive marks describe one or more of the following: "the intended purpose, function[,] or use of the goods[,] . . . the class of users of the goods[,] a desirable characteristic of the goods[,] or the end effect upon the user."  *DeGidio v. W. Grp. Corp.*, 355 F.3d 506, 510 (6th Cir. 2004) (quoting *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1190 (6th Cir. 1988)).  "Examples of descriptive marks are BEST, SUPERIOR, and PREFERRED."  *DeGidio*, 355 F.3d at 510 (quoting *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1117 (6th Cir. 1996)).  In *DeGidio*, the plaintiff filed suit to obtain trademark protection for the mark LAWOFFICES.  *DeGidio*, 355 F.3d at 508.  The plaintiff used the domain name "lawoffices.net" to provide a directory of forty attorneys, legal information, domain name sales, website hosting, and a vanity email service.  *Id.* The defendant used the domain name "lawoffice.com" to market its West Legal

Directory, which was an online resource for legal information.  *Id.*  The court

affirmed the district court's conclusion that the mark was descriptive.  *Id.* at 512.

Among other things, the court reasoned that when clients think of services that

they would obtain from a law office, they would envision the types of services that

the plaintiff's lawoffices.net domain provided.  *Id.* at 511–12.  Thus, the term "law

office" described the types of services that plaintiff's lawoffices.net provided,

making it descriptive.  *See id.*

 Suggestive marks "suggest[] rather than describe[] an ingredient or

characteristic of the goods and requires the observer or listener to use imagination

and perception to determine the nature of the goods."  *Innovation Ventures, LLC v.*

*N.V.E., Inc.*, 694 F.3d 723, 730 (6th Cir. 2012) (quoting *Induct–O–Matic Corp. v.*

*Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir.1984)).  The Sixth Circuit

concluded that the "5-hour ENERGY" mark was suggestive in the *Innovation*

*Ventures* case.  694 F.3d at 730.  The court reasoned that there was a degree of

inferential reasoning necessary for a consumer to figure out that the "5-hour

ENERGY" mark related to an energy shot.  *Id.*  The court found that the mark was

not so obvious that a consumer who saw the "5-hour ENERGY" mark in isolation

would know that it referred to an energy shot and not something else, like a

battery, an exercise program, or a snack for endurance sports.  *Id.*  Therefore, the

court concluded that the "5-hour ENERGY" mark was suggestive.

Courts have also employed the six-factor test articulated by Professor
McCarthy in his treatise in order to distinguish between a descriptive and a
suggestive mark. *DeGidio*, 355 F.3d at 510–11. These factors are:

> (1) How much imagination on the buyer's part is required in trying to cull a
> direct message from the mark about the quality, ingredients or characteristics
> of the product or service? In doing this, it must be kept in mind that the
> ordinary consumer does not spend much time in the marketplace lingering
> over such problems. On the other hand, if the potential buying class at issue
> are experts or professionals, a more critical examination is reasonable.
>
> (2) Does the mark directly convey a real and unequivocal idea of some
> characteristic, function, quality or ingredient of the product or service to a
> reasonably informed potential buyer? That typical buyer will already have
> some knowledge about the product or service and is neither an expert nor a
> totally uninformed about the product. Is some reflection or multi-stage
> reasoning process necessary to cull some direct information about the product
> from the term used as a mark?
>
> (3) Does the mark so closely tell something about the product or service that
> other sellers of like products would . . . likely to want to use the term in
> connection with their goods? Perhaps a more realistic way to pose this
> question is to ask whether, without any prior knowledge of this mark, others
> would be likely to want to use it to describe their products?
>
> (4) Are, in fact, other sellers now using this term to describe their products?
> Even if the mark is descriptive and has attained secondary meaning, if many
> others in other product markets are using this term, the mark may be labelled
> [sic] "weak" and entitled only to narrow protection.
>
> (5) Even though the mark may tell something about the goods or services, is
> it just as likely to conjure up some other, purely arbitrary connotation? E.g.,
> SUGAR & SPICE baked goods, or POLY PITCHER plastic pitchers.
>
> (6) How does the mark fit into the basic concept that descriptive marks cannot
> pinpoint one source by identifying and distinguishing only one seller? That is,

are buyers likely to regard the mark really as a symbol of origin, or merely as another form of self-laudatory advertising?

2 MCCARTHY § 11:71.  A term can be in one category for a one product yet be in another category for a different product.  *Id.*  The proper category will also vary based on the relationship between the term and the product/service.  *Id.*

Applying the first factor, assessing the amount of imagination necessary to determine the type of services being offered, the typical buyer would have to use some degree, though not the highest degree, of imagination to imagine the nature of AGS's services.  The term "Defender" does describe the lawn treatment program's service in defending and protecting against pests throughout the bug season, but the word "Defender" also could be referring to a myriad of different services that defend against other problems—like weeds, mold, etc.  Albeit, it does not require a vast cognitive leap to imagine that AGS would provide anti-pest services given the type of business that AGS is engaged in within its Safari Tree Division—the maintenance of trees and other plants in customer's yards/homes.  (*See* ECF No. 20-2, PageID.429).  Therefore, the first factor appears to be neutral.

As to the second factor, whether the mark directly conveys a real and unequivocal idea of some characteristic, function, quality or ingredient of the product or service to a reasonably informed potential buyer, the court finds that the "Defender" term does convey an idea about the function or characteristic of AGS's

-18-

services, but some reflection is required in order to determine the specific type of service. As discussed above, the word Defender reasonably describes the function/characteristic of AGS's service in that it defends or protects against pests. But, even a reasonably informed potential buyer would likely need to pause and figure out what the Defender program offers. This "figuring out" process suggests that some reflection and multi-step reasoning is necessary to determine that the Defender program is a pest control program, as opposed to some other type of protection program for trees/shrubs—for example, a program to protect against weeds or a program to provide nutrients or other growth-inducing ingredients to trees and shrubs. Only in contemplating AGS's specific company and brand is a consumer likely to conclude that AGS provides anti-pest services. Hence, the second factor weighs in favor of classification as a suggestive mark.

As to the third and fourth factors, whether other sellers would likely seek to utilize the term for their products based on the word's power to describe their offerings and whether the term is already being used by others, CLC has provided the court with several products from different companies that also use the term "Defender" to represent their products. (ECF No. 19-6). Several of these products are pest-control *products* rather than actual pest-control *services*. *See id.* Even so, pest-control products are in a similar category as pest-control services since both ultimately deal with pest-control. Some of the products, though, are weed repellant

and fertilizer.  *Id.*  Only one of the examples provided by CLC is of a company that uses the word Defender to describe its pest management services, and the company noted is based in England.  (*Id.* at PageID.372).  Thus, although only one of Defendant's products is a pest-control service, many of the products on the market using the word "Defender" to describe them are in the pest-control category.  And, it seems reasonable that others who offer services similar to AGS's would want to use the term "Defender" to describe their services.  The relatively wide third-party use of the term "Defender" suggests that AGS's mark is weak and entitled to narrow protection in accordance with element four.  For these reasons, factors three and four weigh in favor of classification as a descriptive mark.

With respect to the fifth factor, the court finds that the designation "Defender" is just as likely to conjure up other, purely arbitrary connotations.  In examining this factor, courts have looked to common usage of words in everyday language to determine whether certain marks were likely, or not, to conjure up purely arbitrary connotations.  In evaluating this factor, at least one court has persuasively opined that, "even though the mark may tell something about the goods or services" if it is "just as likely to conjure up some other, purely arbitrary connotation" then the "mark is suggestive." *Jews for Jesus v. Brodsky*, 993 F.Supp. 282 (D. N.J. March 6, 1998) (finding that the "Jews for Jesus" had no arbitrary connotation); s*ee also Trustco Bank, Nat. Ass'n v. Glens Falls Nat. Bank*

-20-

*and Trust Co., N.A.* 903 F.Supp 335, 342 (N.D.N.Y. Nov. 3, 1995) (holding that "Home Town Bank" was not likely to conjure up a purely arbitrary connotation, but rather a "particular atmosphere.").

The dictionary definition of the word "defender" is "someone who protects a place against attack, or who believes in and supports a person, idea, plan, etc."[3] And the word is in common usage in everyday language to reflect this definition. Thus, unlike the phrases "Jews for Jesus" or "Home Town Bank," it is reasonable to assume that other products and services that protect or guard against unwanted happenings and circumstances might be referred to in the same fashion. It follows then that the term "Defender" is just as likely to evoke connotations of self-defense classes/services, home protection services, vehicles, or other services. Therefore, factor five weighs in favor of a suggestive classification.

As to the last factor, buyers are not likely to regard the "Defender" term as pinpointing to AGS as the seller, as evidenced by wide third-party use of the mark. The sixth factor thus weighs in favor of a descriptive classification.

In summary, factor one of McCarthy's test is neutral; factors three, four, and six weigh in favor of a descriptive classification; and factors two and five weigh in favor of a suggestive classification. Further, similar to the *Innovation Ventures*

---

[3] *Defender*, Cambridge Dictionary (accessed Feb. 23, 2022), available at: https://dictionary.cambridge.org/us/dictionary/english/defender.

case, when considered in isolation, it is not obvious that the "Defender" mark refers to pest control programs and not something else. *Innovation Ventures*, 694 F.3d at 730. AGS's mark is thus within the gray area between descriptive and suggestive marks, and in weighing the factors and giving reasonable inferences to AGS, the court cannot say that the "Defender" term is descriptive and not suggestive.

### c. Secondary Meaning

AGS does not present any argument that "Defender" has acquired a secondary meaning. If a mark is descriptive, then the mark must have acquired a secondary meaning in the marketplace in order to warrant trademark protection. *DeGidio v. W. Grp. Corp.*, 355 F.3d 506, 513 (6th Cir. 2004). Secondary meaning indicates that a mark "has come . . . to be uniquely associated with a specific source." *Id.* (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 766 n.4 (1992)). There must be a preponderance of the evidence "that the attitude of the consuming public toward the mark denotes a single thing coming from a single source." *Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 596 (6th Cir. 1989). Direct proof of secondary meaning is difficult to get, so without direct evidence, courts must draw reasonable inferences from evidence of usage as well as effort and expense toward developing a reputation and goodwill for the trademark. *Id.* The burden is on the plaintiff to show that its mark has

acquired a secondary meaning.  Yet, since the court has concluded that, on balance,

AGS has provided sufficient evidence to establish that its use of the term

"Defender" is suggestive, the court need not evaluate whether the term has

acquired secondary meaning in the market.

### d.  Likelihood of Confusion

Even if the term "Defender" is suggestive, the court must still analyze other

factors to determine whether trademark protection is warranted.  First amongst the

remaining factors is whether there is a likelihood of confusion between AGS's and

CLC's uses of the word "Defender."  The Sixth Circuit set forth an eight-factor test

to evaluate whether there exists a likelihood of confusion between marks in

*Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642,

648 (6th Cir. 1982).  These factors are: "(1) strength of the plaintiff's mark; (2)

relatedness of the goods; (3) similarity of the marks; (4) evidence of actual

confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7)

defendant's intent in selecting the marks; and (8) likelihood of expansion of the

product lines."  *Id.*; *see also Progressive Distribution Servs., Inc. v. United Parcel

Serv., Inc.*, 856 F.3d 416, 424 (6th Cir. 2017).  The court considers each of the

eight factors in turn.

### e.  Strength of AGS's Mark

The strength of a mark focuses on the mark's distinctiveness "and its recognition among the public." *Progressive*, 856 F.3d at 427 (quoting *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 631 (6th Cir. 2002)).  A highly distinctive mark, i.e. a mark that "the public readily accepts . . . as the hallmark of a particular source" is strong.  *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991).

Evaluation of strength involves two separate inquiries: conceptual strength and commercial strength.  *Progressive*, 856 F.3d at 428.  Conceptual strength is the "placement of the mark on the spectrum of marks [and] encapsulates the question of inherent distinctiveness."  *Id.* (quoting *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 419 (6th Cir. 2012)).  Commercial strength is the "marketplace recognition value of the mark."  *Id.*

Conceptual strength depends in part on the category that the mark occupies: generic, descriptive, suggestive, and fanciful or arbitrary.  *Progressive*, 856 F.3d at 428.  This court has concluded that the AGS's use of the word "Defender" could be suggestive.  Therefore, the "Defender" term is somewhat distinctive and carries some conceptual strength.  *See id.*

The commercial strength of a mark depends on public recognition, i.e. "the extent to which people associate the mark with the product it announces."

-24-

*Progressive*, 856 F.3d at 430. "Survey evidence is the most persuasive evidence of commercial recognition." *Id.* But survey evidence is not required, and "[p]roof of marketing may be sufficient to support a finding of broad public recognition." *Id.* Conversely, evidence that third parties have used the mark or similar marks "*in the relevant market* may indicate that the trademark is commercially weak." *Id.* (emphasis added).

CLC has provided this court with numerous examples of the term "Defender" being used to name other products. (ECF No. 19-6). However, many of these products appear to be products that are in different markets than AGS—that is, not in the Midwest region of the United States. Five of the products/services appear to be from Australia and United Kingdom markets based on the links provided for the products. *See id.* For the remaining products that appear to be in United States markets, it is still unclear if they are products that are in the same market as AGS. *See id.* Therefore, CLC's evidence that third parties use the term "Defender" is not strong evidence that the AGS's "Defender" mark is commercially weak.

AGS has provided this court with evidence of its marketing expenditures, and states in its response that it spends thousands of dollars on its advertising activities. (ECF No. 20, PageID.416). However, the aggregate sum of advertising costs is, by itself, is not enough to avoid summary judgment. *Progressive*, 856

-25-

F.3d at 430.  AGS also states that it utilizes several different advertising methods to advertise its Defender services, including "printed marketing collateral such as brochures, flyers and mail inserts electronic marketing collateral such as e-newsletters, its website, outgoing voice recordings that are played for callers that are on hold, trade shows, and phone call campaigns."  (ECF No. 20, PageID.416; ECF No. 20-4, PageID.440–41).  Despite this evidence, "The operative question remains whether [AGS] has provided evidence that would permit a reasonable jury to determine that wide segments of the public previously recognized [Defender] as a mark associated with [AGS's] brand." *Progressive*, 856 F.3d at 430.  The record does not contain evidence that shows the "specific impact" of AGS's advertising or "the degree of consumer recognition of AGS's mark." *Id.*  Indeed, the sealed exhibit AGS provided about their marketing expenditures contains no information about how much consumers associate the "Defender" mark with AGS.  (*See* ECF No. 28).  Without such evidence, the court concludes that AGS's "Defender" mark is commercially weak.

As discussed, strength of a mark includes both conceptual and commercial strength.  AGS's use of "Defender" is conceptually moderate because it could be a suggestive mark, but it is commercially weak because there is no evidence demonstrating the impact of AGS's advertising on consumer recognition.  Thus, although is the mark has moderate conceptual strength, it still lacks commercial

strength, which renders the overall strength of the mark weak.  *Progressive*, 856

F.3d at 430 (stating that [a] mark can be "conceptually strong without being

commercially strong, and thus weak under *Frisch*.") (quoting *Kibler v. Hall*, 843

F.3d 1068, 1074 (6th Cir. 2016)) (internal quotations omitted).  For these reasons,

whether AGS's mark is suggestive or descriptive, factor one weighs in favor of no

likelihood of confusion.

### f.   Relatedness of the Goods

Defendant concedes that the goods or services that both parties provide are

basically the same.  (ECF No. 19, PageID.265).  Therefore, the court need not

address this argument and concludes that this factor weighs in favor of finding a

likelihood of confusion.

### g.  Similarity of the Marks

The "[s]imilarity of [the] marks is a factor of considerable weight."

*Progressive*, 856 F.3d at 432.  To determine similarity, a court does not examine

the marks side by side, but instead "must determine, in the light of what occurs in

the marketplace, whether the mark will be confusing to the public when singly

presented."  *Id.* (quoting *Wynn Oil Co. v. Thomas*, 839 F2d 1183, 1187 (6th Cir.

1988)) (internal quotations omitted).  To assess similarity, a court should consider

"the pronunciation, appearance, and verbal translation of conflicting marks."

-27-

*Progressive*, 856 F.3d at 432 (quoting *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 516 (6th Cir. 2007)).

CLC asserts that the parties' marks are not similar because its use of the word "Defender" is not the same as AGS's mark in which the "Defender" appears with the "D" in the shape of a shield.  (ECF No. 19, PageID.265).  CLC also asserts that the generic word "Defender" is simply not protectable.  (*Id.* at PageID.265–66).  AGS argues that both parties use the same word, "Defender," spelled the same way, to market their services.  (ECF No. 20, PageID.412).  AGS asserts that its unregistered "Defender" mark and the mark CLC uses are therefore identical.  *Id.*

AGS's contentions are well taken.  CLC seems to conflate AGS's stylized Defender mark—the "D" in the shape of a shield—with its unregistered "Defender" mark—which is simply the use of the word "Defender" to name its program.  When assessing both AGS's use of the word "Defender" and CLC's use of the word "Defender," it is clear that the marks are nearly identical.  Both marks use the same word, spelled the same way.  It is worth noting that AGS titles its service the "Defender Program," while CLC named its service the "Defender Plan."  However, this slight difference in the names of their services does not change the fact that both parties use the same word—Defender—to market their

-28-

services.  The court thus finds that factor three weighs in favor of a finding of likelihood of confusion.

### h.  Evidence of Actual Confusion

Evidence of actual confusion is not necessary in order to show that there is a likelihood of confusion.  *Progressive*, 856 F.3d at 433.  Further, courts within this district have concluded that a lack of evidence regarding actual confusion is "rarely significant."  *Gen. Motors Corp. v. Autovation Techs.*, Inc., 317 F. Supp. 2d 756, 762 (E.D. Mich. 2004); *Pita Delight, Inc. v. Salami*, 24 F.Supp.2d 795, 801 (E.D.Mich.1998).   AGS concedes that the record contains no evidence of actual confusion.  (ECF No. 20, PageID.417).  Thus, the court need not further analyze this factor, and it is not a significant factor that the court will consider.

### i.  Marketing Channels Used

When assessing the marketing channels used, courts must determine "how and to whom the respective goods or services of the parties are sold."  *Progressive*, 856 F.3d at 434 (quoting *Leelanau*, 502 f.3d at 519).  There is less likelihood of confusion if the parties' "goods are sold through different avenues."  *Progressive*, 856 F.3d at 434.  Likelihood of confusion also decreases if the parties have different customers and market their services in different ways.  *Id.*  CLC argues that there is some overlap in the marketing channels used by the parties.  (ECF No.

19, PageID.267).  However, CLC states that it strictly used its website to market its

Defender Plan services and did not use any other written advertisement like

brochures and mailings, unlike AGS.  *Id.*  AGS argues that the fact that it uses

additional marketing channels that CLC did not use does not negate the fact that

both parties utilize(d) website marketing.  (ECF No. 20, PageID.417).

The Sixth Circuit concluded that when marketing channels were similar in

some respects and dissimilar in others, it was not error for the district court to

determine that factor five "marginally" favored the trademark owner/originator.

*Lucky's Detroit, LLC v. Double L, Inc.*, 533 F. App'x 553, 559 (6th Cir. 2013).

The parties in *Lucky's* both used word-of-mouth to advertise their marks.  *Id.*  One

party, in addition to word-of-mouth, however, also used radio and flyers to market

its mark.  *Id.*  The other party used word-of-mouth and billboards in order to

advertise.  *Id.*

Similar to the *Lucky's* case, both parties share one method of advertising in

common—the internet.  But, CLC only used the internet to market its Defender

plan.  In addition to the internet, AGS uses "printed marketing collateral such as

brochures, flyers and mail inserts electronic marketing collateral such as e-

newsletters, its website, outgoing voice recordings that are played for callers that

are on hold, trade shows, and phone call campaigns."  (ECF No. 20, PageID.416;

ECF No. 20-4, PageID.440–41).  Because there is overlap as to one marketing

-30-

channel, the court concludes that similar to the parties in *Lucky's*, factor five

marginally weighs in AGS's favor of finding that a likelihood of confusion exists.

### j. Likely Degree of Purchaser Care

The general standard for determining if a likelihood of confusion would

result presumes the existence of an ordinary buyer exercising ordinary caution.

*Progressive*, 856 F.3d at 435.  A higher degree of care is appropriate if the buyer

has expertise or sophistication.  *Id.*  The expectation of greater attention diminishes

the likelihood of confusion.  *Id.*  Likely degree of purchaser care is also highly

dependent on the similarity of the parties' marks.  *Lucky's*, 533 F. App'x at 559

(citing *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109

F.3d 275, 285 (6th Cir. 1997)).  The significance of this factor will also "often . . .

depend upon its relationship with the other seven factors." *Daddy's*, 109 F.3d at

285–86.

Here, both parties' customers are primarily residential consumers.

Therefore, they are presumed to exercise ordinary care and caution.  It is worth

noting that both parties are/were marketing a service that included some type of

recurring treatment program—therefore, consumers may pay greater attention

when purchasing the service and be less likely to  confuse the product.  Yet, given

the similarity of the marks, even a careful consumer might assume that the marks are affiliated with one another.  *See Therma-Scan*, 295 F.3d at 638.

So, the court concludes that likely degree of purchaser care weighs in favor of finding a likelihood of confusion.

### k. CLC's Intent in Selecting the Marks

AGS concedes that the evidence does not tend to show that CLC selected "Defender" with the intent to capitalize on AGS's trademark.  (ECF No. 20, PageID.418).  However, "[i]ntent is an issue whose resolution may benefit only the cause of the senior user, not of an alleged infringer." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 520 (6th Cir. 2007).  Therefore, the court concludes that this factor, although of no use to AGS, similarly does not benefit CLC. *See id.*

### l. Likelihood of Expansion of the Product Lines

AGS concedes that CLC has stopped using the "Defender" mark.  (ECF No. 20, PageID.419).  But, this factor is afforded little to no weight.  "[A] finding of little evidence of expansion plans is accorded little to no weight[.]" *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 424 (6th Cir. 2012).

-32-

### m. Summary of the Factors

When applying the *Frisch* factors, the ultimate question is "whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Progressive*, 856 F.3d at 436.  The factors imply no mathematical precision, but are simply a guide.  *Id.*  Further, the strength of the mark and similarity of the marks are the most important factors.  *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 424 (6th Cir. 2012).

Here, regarding the two most significant factors, the court has concluded that AGS's mark is not strong.  On the other hand, the court has also found that the similarity of the marks *is* strong.  Although the marks are very similar (factor three) and the marks relate to the same service (factor two), the mark itself is not strong, leading this court to conclude that the likelihood of confusion is not as great as it could be.  *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 794 (6th Cir. 2004) ("[t]he stronger the mark, all else equal, the greater the likelihood of confusion."). However, likely degree of purchaser care, factor six, weighs in favor of confusion, because similar marks can lead even a careful consumer to assume affiliation. *Makers Mark*, 679 F.3d at 423.  Therefore, the court will afford factor six significant weight.  Even so, given that the Defender mark itself is not strong, the likelihood of confusion is not as strong and thus the degree of purchaser care factor is also somewhat diminished.

-33-

Factor four, actual confusion, is rarely a significant factor.  Further, this court has concluded that factor five, marketing channels used, only weighs slightly in favor of AGS.  Therefore, the court will afford little weight to factors four and five.  Factor seven—intent, is likewise afforded no weight because intent is an issue whose resolution may benefit only the cause of the senior user, not of an alleged infringer.  *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 520 (6th Cir. 2007).  Factor eight—likelihood of expansion, also is afforded little to no weight because there is no evidence that CLC plans to expand its use of the word "Defender."

Thus, to summarize, this court has concluded that factor one weighs in favor of a finding that no likelihood of confusion exists.  Factors two, three, and six weigh in favor of a finding that there is a likelihood of confusion.  Factors four, five, seven, and eight are afforded little to no weight.  Thus, only one factor, albeit an important factor, weighs against a likelihood of confusion and three factors weigh in favor of a finding that a likelihood of confusion exists.  Although factors two, three, and six are diminished due to the low strength of the mark (factor one), all three of these factors do solidly favor AGS.  And when considering the *Frisch* factors, this court must remember the ultimate question: if consumers are likely to believe that the services are affiliated in some way.  Viewing the undisputed facts in AGS's favor and affording all reasonable inferences in its favor, the court

concludes that AGS has provided sufficient evidence to reasonably establish a likelihood of confusion exists.

## C. Affirmative Defenses

### 1. Fair Use

CLC asserts the affirmative defense of fair use to argue that it cannot be liable for any potential trademark infringement.  (ECF No. 19, PageID.262).  AGS contends that the Fair Use doctrine is not applicable to this case.  (ECF No. 20, PageID.407–09).

"In evaluating a defendant's fair use defense, a court must consider whether [the] defendant has used the mark: (1) in its descriptive sense; and (2) in good faith." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 612 (6th Cir. 2009) (quoting *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 920 (6th Cir.2003) (holding that the use of Tiger Woods's name on the back of an envelope containing an artist's depiction of Woods was purely descriptive because "Woods is mentioned only to describe the content of the print.").  A mark's descriptive sense is the "original, descriptive primary meaning" which "is always available for use by others to describe their goods, in the interest of free competition." *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.* 270 F.3d. 298 (6th Cir. 2001) (citing 2 MCCARTHY 11:45).  Here, the evidence tends to show that CLC used the term

-35-

"Defender" in good faith, and AGS has seemingly conceded that the evidence does not show CLC acted with improper intent. (ECF No. 20, PageID.418). However, CLC did not just use the word "Defender" in its descriptive sense; rather, it used the word "Defender" to name a pest-control service that it offered. Therefore, the court concludes that the Fair Use defense is not available to CLC.

## 2. 15 USC §1115(b)(5)

The court has already determined that AGS's claim under 15 U.S.C. § 1114 fails as a matter of law. And 15 U.S.C. § 1115(b) only applies to this failed claim. As such, the court need not evaluate whether this defense is available to CLC.

## D. Michigan Claims

The remainder of AGS's claims are analyzed under the same framework as its trademark infringement and unfair competition claims. *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 604–05 (6th Cir. 1991); *Schrieber Manufacturing Co., v. Soft America, Inc.* 704 F. Supp. 759, 781 (E.D. Mich 1989). AGS's common law trademark claim (Count III) is analyzed under the same criteria as its infringement claim under 15 U.S.C. §1114 (Count I). Thus, for the reasons already set forth in its Count I analysis above, the court will also grant summary judgment as to Count III.

AGS's claim under Michigan Consumer Protection Act, MCL § 445.903, is

analyzed under the same criteria as its unfair competition claim under 15 U.S.C.

§1125(a) (Count II).  Thus, for the reasons already set forth in its Count II analysis

above, the court will deny summary judgment as to Count IV.


## V. CONCLUSION

For the reasons discussed herein, the court **GRANTS IN PART** CLC's

Motion for Summary Judgment as to Counts I and III, related to its registered

mark, **AND DENIES IN PART** CLC's motion as to Counts II and IV, related to

its unregistered mark.

**SO ORDERED.**

s/Stephanie Dawkins Davis
HON. STEPHANIE DAWKINS DAVIS
United States District Court Judge

Dated:        March 18, 2022